1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

KIMBERLY BRINK and MELVYN KLEIN, Derivatively On Behalf Of BEYOND MEAT, INC.,

Plaintiffs,

v.

ETHAN BROWN, SETH GOLDMAN, GREGORY BOHLEN, DIANE CARHART, RAYMOND J. LANE, BERNHARD VAN LENGERICH, NED SEGAL, CHRISTOPHER ISAAC STONE, DONALD THOMPSON, KATHY N. WALLER, and MARK J. NELSON,

Defendants,

-and-

BEYOND MEAT, INC.,

Nominal Defendant.

Case No.:

**VERFIED DERIVATIVE COMPLAINT**

Plaintiffs Kimberly Brink and Melvyn Klein ("Plaintiffs"), by and through their undersigned counsel, derivatively on behalf of Nominal Defendant Beyond Meat, Inc. ("Beyond Meat" or the "Company"), submit this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiffs' allegations are based upon their

1

personal knowledge as to themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by Beyond Meat with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Beyond Meat against certain of its officers and directors seeking to remedy Defendants' breach of fiduciary duties, unjust enrichment, corporate waste, and for contribution under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") that occurred between May 2, 2019 to the present (the "Relevant Period") and have caused substantial harm to Beyond Meat.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f).

3.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  This derivative action is not a collusive

action to confer jurisdiction on a court of the United States that it would not otherwise have.

4.     The Court has personal jurisdiction over each of the Defendants because each defendant is either a corporation incorporated in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## PARTIES

### Plaintiffs

6.     **_Plaintiff Kimberly Brink_** ("Plaintiff Brink") is, and was at relevant times, a shareholder of Beyond Meat.  Plaintiff Brink still retains his Beyond Meat shares. Plaintiff Brink will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

7.     **_Plaintiff Melvyn Klein_** ("Plaintiff Klein") is, and was at relevant times, a shareholder of Beyond Meat.  Plaintiff Klein still retains his Beyond Meat shares. Plaintiff Klein will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

### Nominal Defendant

8.      Nominal Defendant Beyond Meat is a Delaware corporation, with principal executive offices located at 119 Standard Street, El Segundo, CA 90245.

**Director Defendants**

9.      *Defendant Ethan Brown ("Brown")* is the founder of the Company and has served as the Company's President and Chief Executive Officer ("CEO") since 2009.

10.     *Defendant Seth Goldman* ("Goldman") has served as a Company director since February 2013 and is Chairman of the Board.  He also served as Executive Chair of the Company from February 2013 until February 2020.

11.     *Defendant Gregory Bohlen* ("Bohlen") served as a Company director from February 2013 until he resigned on October 23, 2019.

12.     *Defendant Diane Carhart* ("Carhart") has served as a Company director since January 2016 and serves as a member of the Audit Committee.

13.     *Defendant Raymond J. Lane* ("Lane") has served as a Company director since February 2015 and serves as a member of the Compensation Committee.

14.     *Defendant Bernhard van Lengerich* ("van Lengerich") has served as a Company director since November 2016.

15.     *Defendant Ned Segal* ("Segal") has served as a Company director since November 2018 and serves as a member of the Audit Committee.

4

16.  **_Defendant Christopher Isaac Stone_** ("Stone") has served as a Company director since January 2012 and serves as the Chair of the Nominating and Corporate Governance Committee.

17.  **_Defendant Donald Thompson_** ("Thompson") has served as a Company director since October 2015 and serves as the Chair of the Compensation Committee.

18.  **_Defendant Kathy N. Waller_** ("Waller") has served as a Company director since November 2018 and serves as the Chair of Audit Committee and as a member of the Nominating and Corporate Governance Committee.

**Officer Defendant**

19.  **_Defendant Mark J. Nelson_** ("Nelson") has served as Beyond Meat's Chief Financial Officer ("CFO") since May 2017 and as Treasurer since September 2018.  Previously, he served as the Company's Chief Operating Officer from May 2017 through September 2018, and as Secretary from September 2018 through May 2019.

**BACKGROUND**

20.  The Company is a food company that provides plant-based meats, offering its products in the meat platforms of beef, pork, and poultry.  The Company sells its products to various customers in the retail and foodservice channels through brokers and distributors in the U.S. and internationally.  Formerly known as Savage

River Inc., the Company was founded in 2009 and changed its name to Beyond Meat, Inc. in September 2018.

21.   Don Lee is a maker of plant-based and meat proteins.   In 2014, the Company entered into an exclusive supply agreement with Don Lee to produce all of its products, including the development and launch of its popular Beyond Burger.

22.   In early 2017, following the launch of the Beyond Burger, Beyond Meat terminated its exclusive supply agreement with Don Lee and moved its production to other companies, including ProPortion.

23.   In May 2017, Don Lee filed a complaint against the Company in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, and unfair competition, seeking monetary damages and declaratory and injunctive relief.

24.   Don Lee's initial lawsuit spawned other related legal proceedings.   In July 2017, the Company filed a cross-complaint against Don Lee, alleging that Don Lee had breached the Supply Agreement by failing to provide saleable products engaged in unfair competition, and unlawfully converted Beyond Meat property.

25.   In October 2018, Don Lee filed an amended complaint adding ProPortion, one of Beyond Meat's new contract manufacturers, as a defendant, asserting claims arising from ProPortion's alleged use of Don Lee's trade secrets and for replacing Don Lee as the Company's co-manufacturer.   ProPortion then filed

a cross-complaint against the Company, asserting claims of total and partial equitable indemnity, contribution and repayment.

26.    On March 2019, Don Lee filed a second amended complaint, adding claims of fraud and negligent misrepresentation against the Company.  Don Lee alleged that Don Lee found plastics, cardboard and a metal nozzle in ingredients that the Company supplied and that a Company truck had arrived at a Don Lee processing facility with a load contaminated with an unidentified white powder. Don Lee further alleged that Beyond Meat had provided an altered copy of a food-safety audit of its manufacturing facilities.

27.    In May 2019, with the Don Lee Litigation still ongoing, the Company conducted its initial public offering ("IPO"), issuing 11,068,750 shares of common stock priced at $25.00 per share.

**FALSE AND MISLEADING STATEMENTS**

28.    On May 2, 2019, the Company's securities began trading on the NASDAQ following the Company's Initial Public Offering ("IPO").   In the registration statement and prospectus issued in connection with the IPO (the "Offering Documents"), with respect to the Don Lee Litigation, the Company stated in relevant part:

> [O]n May 25, 2017, following our termination of our supply agreement with Don Lee Farms, a co-manufacturer, Don Lee Farms filed a lawsuit against us in California state court claiming that we wrongfully terminated the parties' contract and that we misappropriated their trade secrets principally by sharing with subsequent co-manufacturers the

processes for manufacturing our products—processes which they claim to have developed. On July 27, 2017 we filed a cross-complaint, alleging that Don Lee Farms (1) breached the supply agreement, including by failing to provide saleable product, as certain of our products manufactured by Don Lee Farms were contaminated with salmonella and other foreign objects, and that Don Lee Farms did not take appropriate actions to address these issues; (2) engaged in unfair competition in violation of California's Unfair Competition Law; and (3) unlawfully converted certain Beyond Meat property, including certain pieces of equipment. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's comanufacturer.

ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. Trial is currently set for May 18, 2020. Don Lee Farms is seeking from us and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of our use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorneys' fees and costs ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs. ***We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs***.

***We intend to vigorously defend ourselves against the claims and prosecute our own***. However, we cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims

against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. As another example, we also could be required to pay attorney's fees and costs incurred by Don Lee Farms or ProPortion.  [Emphasis added].

29.     The statements in the Offering Documents cautioning investors that the Company "cannot assure" its investors as to the outcome of the Don Lee Litigation, that the Company "could be required to pay damages," and that Don Lee "could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves" were clearly generic disclaimers that were not tailored to the Company's actual known risks with respect to the Don Lee Litigation, given the Company's knowledge of its own conduct with respect to the Supply Agreement and its collaboration with Don Lee.

30.     On June 12, 2019, Defendants caused the Company to file its quarterly report on Form 10-Q with the SEC for the quarter ended March 30, 2019 (the "Q1 2019 10-Q").  With respect to the Don Lee Litigation, the Q1 2019 10-Q echoed the statements in the Company's Offering Documents:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for

breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. *We deny all of these claims* and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

*We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims.* We cannot assure you that Don Lee Farms or ProPortion will not prevail in

all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable. [Emphasis added].

31.     The Q1 2019 10-Q likewise reiterated the generic disclaimers that were not tailored to the Company's actual known risks with respect to the Don Lee Litigation, given the Company's knowledge of its own conduct with respect to the Supply Agreement and its collaboration with Don Lee.

32.     On July 29, 2019, Defendants caused the Company to file its quarterly report on Form 10-Q with the SEC for the quarter ended June 29, 2019 (the "Q2 2019 10-Q"). With respect to the Don Lee Litigation, the Q2 2019 10-Q echoed the statements in the Company's Offering Documents and in the Q1 2019 10-Q:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October

2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. ***On June 19, 2019, we filed an answer denying Don Lee Farms' claims.*** Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

***We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims***. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could

also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable. [Emphasis added].

33.     Like the Q1 2019 10-Q, the Q2 2019 10-Q likewise reiterated the generic disclaimers that were not tailored to the Company's actual known risks with respect to the Don Lee Litigation, given the Company's knowledge of its own conduct with respect to the Supply Agreement and its collaboration with Don Lee.

34.     On November 12, 2019, Defendants caused the Company to file its quarterly report on Form 10-Q with the SEC for the quarter ended September 28, 2019 (the "Q3 2019 10-Q").  With respect to the Don Lee Litigation, the Q3 2019 10-Q echoed the statements in the Company's Offering Documents and prior quarterly filings:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and

for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. ***On June 19, 2019, we filed an answer denying Don Lee Farms' claims.*** Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

***We believe we were justified in terminating the supply agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims***. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply

agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable.  [Emphasis added].

35.    Like the Company's previous two quarterly filings, the Q3 2019 10-Q likewise reiterated merely generic disclaimers that were not tailored to Beyond Meat's actual known risks with respect to the Don Lee Litigation, given the Company's knowledge of its own conduct with respect to the Supply Agreement and its collaboration with Don Lee.

36.    The statements referenced above were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  That is, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's termination of its supply agreement with Don Lee constituted a breach of that agreement, thus exposing the Company to foreseeable legal liability and reputational harm; (ii) the Company and certain of its employees had doctored and omitted material information from a food safety consultant's report, which the Company represented as accurate to Don Lee; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**THE TRUTH BEGINS TO EMERGE**

37.    On January 27, 2020, Don Lee issued a press release entitled "Judge Rules Don Lee Farms Likely to Obtain a Judgment.  Beyond Meat's CFO and Others Named Individually for Fraud."  The press release stated, in part, that "[a] judge has ruled Don Lee Farms proved the probable validity of its claim that Beyond Meat breached its manufacturing agreement with Don Lee Farms" and that "[i]n a separate motion before a different Judge, the Court granted Don Lee Farms' request to name Beyond Meat Chief Financial Officer Mark Nelson, Senior Quality Assurance Manager Jessica Quetsch and Director of Operations Anthony Miller in its fraud claims which allege they intentionally doctored and omitted material information from a food safety consultant's report, and then delivered that doctored report to Don Lee Farms and affirmatively represented that it was the complete opinion of the consultant."

38.    On this news, Beyond Meat's stock price fell $4.63 per share, or 3.71%, to close at $120.12 per share on January 28, 2020.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

39.    Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by Defendants.

40.    Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

41.    Plaintiffs are current owners of Beyond Meat stock and have continuously been an owner of Beyond Meat stock during all times relevant to Defendants' illegal and wrongful course of conduct alleged herein.    Plaintiffs understand their obligation to hold stock throughout the duration of this action and are prepared to do so.

42.    During wrongful course of conduct at the Company, the Board consisted of the Director Defendants.  Because of the facts set forth throughout this Complaint, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

43.    The Company's Board is currently comprised of nine (9) members -- Brown, Goldman, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, and Waller   Thus, Plaintiffs are required to show that a majority of the Demand Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

44.    Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning its future prospects.  Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

45.    Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

46.    Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.   For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiffs have not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

47.    Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein, and are therefore not disinterested parties.

48.    Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

49.    Because of their participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendants are

unable to comply with their fiduciary duties and prosecute this action.  Each of them is in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending themselves in the securities fraud class action lawsuit brought under the Securities Exchange Act of 1934.

50.     Additionally, each of the Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## THE DIRECTOR DEFENDANTS ARE
## NOT INDEPENDENT OR DISINTERESTED

**Defendant Brown**

51.     Defendant Brown is not disinterested for purposes of demand futility because his principal occupation is President and CEO of the Company.   The Company provides Defendant Brown with his principal occupation, and he receives handsome compensation, including $967,994 during fiscal year 2018.

52.     Defendant Brown was ultimately responsible for all of the false and misleading statements and omissions that were made, including those contained in the Offering Documents, which he signed, and in the 1Q19 10-Q, 2Q19 10-Q, and 3Q19 10-Q.

53.     Defendant Brown is also incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the securities class

action entitled *Tran v. Beyond Meat, Inc., et al.*, Case 2:20-cv-00963 (C.D. Cal.) ("Securities Class Action").

**Defendant Goldman**

54.    Defendant Goldman was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future. Additionally, Defendant Goldman signed, and thus personally made, the false and misleading statements in the Offering Documents.

**Defendant Carhart**

55.    Defendant Carhart has served as a Company director since January 2016 and serves as a member of the Audit Committee.

56.    As a trusted Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets.

57.    Defendant Carhart was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future. Defendant Carhart also signed, and thus personally made the false and misleading statements in the Offering Documents.

58.     Defendant Carhart's stock sales before the fraud was exposed, which yielded approximately $6.72 million in proceeds, also demonstrate her motive in facilitating and participating in the scheme.

**Defendant Lane**

59.     Defendant Lane has served as a Company director since February 2015 and serves as a member of the Compensation Committee.

60.     Defendant Lane was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future.  Defendant Lane also signed, and thus personally made the false and misleading statements in the Offering Documents.

**Defendant van Lengerich**

61.     Defendant van Lengerich has served as a Company director since November 2016.

62.     Defendant van Lengerich was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future.

63.     Defendant van Lengerich also signed, and thus personally made the false and misleading statements in the Offering Documents.

64.     Defendant van Lengerich's insider sale before the scheme was exposed, which yielded approximately $11 million in proceeds, demonstrate his motive in facilitating and participating in the fraud.

**Defendant Segal**

65.     Defendant Segal has served as a Company director since November 2018 and serves as a member of the Audit Committee.

66.     Defendant Segal also signed, and thus personally made the false and misleading statements in the Offering Documents.

**Defendant Stone**

67.     Defendant Stone has served as a Company director since January 2012 and serves as the Chair of the Nominating and Corporate Governance Committee.

68.     Defendant Stone was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future.

69.     Defendant Stone also signed, and thus personally made the false and misleading statements in the Offering Documents.

70.     Defendant Stone's insider sales before the scheme was exposed, which yielded approximately $9.86 million in proceeds, demonstrate his motive in facilitating and participating in the fraud.

**Defendant Thompson**

71.     Defendant Thompson has served as a Company director since October 2015 and serves as the Chair of the Compensation Committee.

72.     Defendant Thompson was on the Company's Board at the time the Company terminated the Supply Agreement, and thus was aware prior to the IPO that such termination would expose the Company to liability in the future.

73.     Defendant Thompson also signed, and thus personally made the false and misleading statements in the Offering Documents.

**Defendant Waller**

74.     Defendant Waller has served as a Company director since November 2018 and serves as the Chair of Audit Committee and as a member of the Nominating and Corporate Governance Committee.

75.     Defendant Waller also signed, and thus personally made the false and misleading statements in the Offering Documents.

**Directors Longstanding Business and Personal Relationships**

76.     Defendant Stone is the co-founder and creative director of Twitter, Inc., where Defendant Segal has served as CFO since 2017.

**Defendants Carhart, Segal, and Waller**

77.     Defendants Carhart, Segal, and Waller (the "Audit Committee Defendants") served on the Company's Audit Committee during the Relevant Period.

78.     The Audit Committee Defendants failed to ensure the integrity of the Company's financial statements and internal controls, as they are charged to do under the Audit Committee Charter, allowing the Company to file false and misleading financial statements with the SEC. Thus, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is excused as to them.

## FIRST CAUSE OF ACTION

## Against Defendants for Breach of Fiduciary Duties

79.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

80.     Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

81.     Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

82.     Defendants recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose that: (1) the Company's termination of the Supply Agreement had constituted a breach of the agreement, and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) the Company falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain

Company employees had doctored to, among other things, exclude pertinent safety information; and (3) Beyond Meat failed to maintain internal controls.  As a result of the foregoing, Beyond Meat's public statements were materially false and misleading at all relevant times.

83.   Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and disguising insider sales.

84.   As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

85.   As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the

Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION
### Against Defendants for Unjust Enrichment

86.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein

87.     By their wrongful acts and the omissions of material fact that they caused to be made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

88.     During the Relevant Period, Defendants either received bonuses, stock options, or similar compensation from the Company that was tied to the financial performance or artificially inflated valuation of the Company or received compensation that was unjust in light of Defendants' bad faith conduct.

89.     Plaintiffs, as shareholders and representatives of the Company, seek restitution from Defendants and seek an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by Defendants due to their wrongful conduct and breach of their fiduciary duties.

## THIRD CLAIM
### Against Individual Defendants for Waste of Corporate Assets

90.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

91.     As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions (such as the Securities Class Action and the Don Lee Litigation), to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

92.     As a result of the waste of corporate assets, Defendants are each liable to the Company.

93.     Plaintiffs, on behalf of Beyond Meat, have no adequate remedy at law.

## FOURTH CLAIM

**Against Defendants Brown and Nelson for Contribution
Under Sections 10(b) and 21D of the Exchange Act**

94.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

95.     The Company and Defendants Brown and Nelson are named as defendants in the Securities Class Action.  If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Brown and Nelson's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

96.     Because of their positions of control and authority as officers and/or directors of the Company, Defendants Brown and Nelson were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of

the Company, including the wrongful acts complained of herein and in the Securities

Class Action.

97.     Therefore, Defendants Brown and Nelson are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f).

98.     As such, the Company is entitled to receive all appropriate contribution or indemnification from Defendants Brown and Nelson.

### **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment as follows:

A.     Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.     Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C.     Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D.      Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.


Dated: March 18, 2020


**TOSTRUD LAW GROUP, P.C.**

By: /s/ Jon A. Tostrud
    JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Tel:   (310) 278-2600
Fax:   (310) 278-2640
Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
THOMAS J. MCKENNA
501 Fifth Avenue South, 19th Floor
New York, NY 10016
Tel:   (212) 983-1300
Fax:   (212) 983-0383
Email: tjmckenna@gme-law.com

***Counsel for Plaintiffs***

## **VERIFICATION**

I, Kimberly Brink, am a plaintiff in the within action. I have reviewed the allegations made in this Verified Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this ___18th___ day of March 2020.

KIMBERLY BRINK

1



**VERIFICATION**

I, Melvyn Klein, am a plaintiff in the within action. I have reviewed the allegations made in this Verified Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _17_ day of March 2020.

MELVYN KLEIN